JONATHAN M. GORDON (SBN 082202)
jonathan.gordon@alston.com
LEIB M. LERNER (SBN 227323)
leib.lerner@alston.com
CASSANDRA HOOKS (SBN 244471)
cassandra.hooks@alston.com
**ALSTON & BIRD LLP**
333 South Hope Street, Sixteenth Floor
Los Angeles, California 90071
Telephone: (213) 576-1000
Facsimile: (213) 576-1100

PETER ELIASBERG (SBN 189110)
peliasberg@ACLU-SC.ORG
**ACLU FOUNDATION**
**OF SOUTHERN CALIFORNIA**
1313 West Eighth Street
Los Angeles, California 90017
Telephone: (213) 977-9500
Facsimile: (213) 977-5299

DANIEL MACH (DC Bar No. 461652)
dmach@dcaclu.org
**ACLU FOUNDATION**
**PROGRAM   ON   FREEDOM   OF**
**RELIGION AND BELIEF**
915 15th Street NW
Washington, DC 20005
Telephone: (202) 675-2330
Facsimile: (202) 546-0738
*Pro hac vice application pending*

HARSIMRAN KAUR DANG, ESQ. (SBN: 264240)
harsimran@sikhcoalition.org
**THE SIKH COALITION**
39465 Paseo Padre Pkwy., Ste. 3550
Fremont, California 94538
Telephone: (510) 659-0900 x92
Facsimile: (510) 952-3900

Attorneys for Plaintiff Sukhjinder S. Basra

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| SUKHJINDER S. BASRA, | Case No.: CV11-01676 SVW(FMOx) |
| Plaintiff, | **DECLARATION OF TONI V. BAIR IN SUPPORT OF PLAINTIFF SUKHJINDER S. BASRA'S MOTION FOR A PRELIMINARY INJUNCTION** |
| v. | |
| MATTHEW CATE, Secretary of the California Department of Corrections and Rehabilitation, in his official capacity, and TERRI GONZALEZ, Warden of the California Men's Colony, in her official and individual capacities, | Honorable Stephen V. Wilson |
| | Hearing Date:      April 4, 2011 |
| | Time:                 1:30 p.m. |
| | Courtroom:        6 |
| Defendants. | Complaint Filed: February 25, 2011 |

1

I, Toni V. Bair, declare as follows:

1.     I have personal knowledge of the facts set forth in this declaration and if called as a witness, could and would testify competently to them.

2.     I am a Corrections Consultant/Expert Witness primarily dealing with professional correctional management, use of force, and the death penalty.  I have previously testified and consulted in approximately twenty-five jail systems and  seventeen prison systems in twenty-four different states, including the Federal Bureau of Prisons, in the areas of: professional correctional management; failure to protect; unnecessary use of force matters; wrongful deaths; death row matters; and several other cases regarding correctional as well as constitutional issues.  A true and correct copy of my C.V. is attached as Exhibit 1.

3.     I have been a Corrections professional for more than thirty-five (35) years in both juvenile and adult systems, including  jails and state prisons.  I have spent six years (6) working in the Juvenile Corrections field, both in probation and secure confinement facilities; fourteen years (14) as a corrections administrator in three (3) different state prison systems.  For the past twenty-five (25) years, I have been a national consultant/expert witness in the field of corrections.  I have testified regarding twenty-two (22) state prison systems and in the Federal Bureau of Prisons Systems in seventy-six (76) different court cases.

4.     I have held the following positions in Corrections: Counselor, Captain, Investigator, Unit Manager, Warden, Regional Administrator, and Assistant Commissioner. I opened the first Utah Department of Corrections Youthful Offender Prison as a Warden.  I have been Warden of Virginia's Maximum Security Mecklenburg Correctional Center as well as a Regional Administrator supervising eleven prisons in Virginia.  While in New York City as Assistant Commissioner for one of the nation's largest urban jails, I was responsible for overseeing the Department's compliance with constitutional issues and court orders in the seventeen (17) jails throughout the five (5) boroughs of New York City. I recently participated in the writing of a *"BRIEF OF CORRECTIONS PROFESSIONALS AS AMICI*

1  *CURIAE IN SUPPORT OF RESPONDENT"* in the Supreme Court of the United States,

2  Reginald Wilkinson, et al., Petitioners v. Charles E. Austin, et al., Respondents No. 04-495.

3       5.    As part of my correctional work, I read monthly journals in the field of

4  corrections as well as numerous Corrections texts.  In addition, I regularly talk with

5  correctional professionals in the field regarding the day-to-day operations of correctional

6  facilities.  As a corrections consultant, I am involved on a continual basis in the operations of

7  our nation's correctional facilities.  As a consequence, I am very familiar with today's

8  professional correctional standards of care as they relate to the treatment and management of

9  inmates/detainees in our nation's correctional facilities.

10       6.    Not only have I had extensive correctional experience both as an administrator

11  in three (3) different States (Utah, Virginia, New York), I have specific experience regarding

12  inmate escapes.  In 1985, I was recruited from Utah to take over the Mecklenburg

13  Correctional Facility in Virginia after six (6) death row inmates managed to escape from that

14  Super Max facility.  Part of my mandate was to review the operations of Mecklenburg, its

15  policies and procedures as well as practices to ensure that an escape never occurred again.

16  Later, as a Regional Administrator supervising 11 institutions,

17  I conducted a systemic review of all of my institutions practices, policies and procedures to

18  ensure that escapes did not occur from those facilities as well.

19  I.  *BASRA V. CATE*

20       7.    I have been retained by plaintiff, Mr. Basra, to offer an opinion regarding the

21  California Department of Corrections and Rehabilitation (CDCR) regulation that forbids

22  inmates from having beards that exceed one-half inch in length.

23  II.  CDCR INMATE GROOMING STANDARDS

24       8.    California Code of Regulation, 15 CA ADC §3062 (h) provides:

25  *(h) Facial hair, including short beards, mustaches, and sideburns are permitted for*

26  *male inmates and shall not extend more than one-half inch in length outward from the*

27  *face.*

28

9.      In my opinion, there is no legitimate penological interest served by forbidding inmates from having beards more than one-half inch.

10.      Based on my review of the District Court's decision in *Mayweathers v. Terhune* , it is my understanding that the CDCR justifies this beard regulation upon their assumption that lengthy beards will assist the inmates in a possible ESCAPE and further, that the lengthy beards may be utilized by the inmates to hide WEAPONS and other CONTRABAND.

11.      In my opinion, the CDCR assumptions are without merit for two reasons: first, it is my opinion that prisoners do not escape from prison or jails by growing or shaving long beards to alter their appearance; moreover, there are policies, procedures and systems already in place that make it extremely difficult for inmates to escape custody from a secure correctional facility existing policies and procedures make it extremely difficult to escape from prison facilities, even if prisoners are permitted to have long beards (see III B 1-6 below).  Similarly, it is my opinion that as an empirical matter, there is no real problem in prisons and jails of prisoners concealing contraband in long beards, moreover even if there were, the problem could be addressed without prohibiting long beards.

III.  ESCAPE PREVENTION (HAIR REGULATION)

  A.  There is no real problem with inmates escaping by growing and/or shaving long beards.

12.      Based upon my extensive personal experience as a corrections administrator, I do not find this beard  issue to be a problem as it relates to correction's primary mission of security, safety and humane treatment of inmates in their custody.  In addition, plaintiff's expert witness in *Mayweathers v. Terhune,* George Sullivan, concurred that this is a non-issue.  He had never heard of an inmate escaping from a secure facility by shaving his beard or altering his appearance in such a way that professional correctional staff would allow him to walk out the front doors and escape.

13.      I have never heard in my thirty-five plus (35) years of corrections experience where an inmate altered his appearance by either growing a long beard or shaving his beard

and successfully escaped from prison; or for that matter, by altering his appearance in any way and then being able to fool the correctional staff and walk out the front gate.  CDCR may point to anecdotal instances (although I and George Sullivan have never heard of one); however, they certainly do no rise to the level of frequency which should result in the necessity of a regulation prohibiting inmates from growing beards.

14.     Inmates may escape by going over, through or under security fences.  They may hide in a vehicle leaving the institution. They may effectuate an escape while escorted outside the perimeter for a medical, legal or work excursion.  Inmates do not escape through the front gate by altering their appearances for one simple reason: it doesn't work.  Consequently, they don't try it.

15.     According to the Bureau of Justice Statistics less than one-half of one percent (½ of 1%) of incarcerated inmates escape.  Very few of those who do "escape" do so from secure confinement.  The vast majority "escape" from Community Corrections Centers ( half-way houses), work release, minimum security farm and garden facilities (walk-aways), while on excursions away from the secure facility such as court appearances, parole hearings, medical visits, funerals, etc.  Altering your appearance and walking out the front gate just does not happen.

B.     <u>Policy and Procedure to Prevent Escape</u>

16.     Prisons and jails throughout the United States already have systems set up to ensure that inmates do not escape from secure confinement.

1.     <u>Identification Cards (ID)</u>

17.     All individuals who enter a secure prison facility must have personal identification and be issued an ID card and/or badge.  Inmates, staff, volunteers, and visitors must carry those issued ID's.  If an inmate alters his appearance during incarceration, he would have to obtain an altered ID as well in order to possibly escape.

2.     <u>Picture ID Check Points</u>

18.     Whenever an inmate moves within the prison facility, he must pass through numerous check points manned by correctional staff who check his picture ID in the event

that the corrections officers do not recognize the inmate.  If an inmate has altered his appearance, the corrections officer ensures that a new ID card is obtained.  Even if an inmate altered his appearance by shaving his beard or growing a beard, when he  attempted to exit the institution, he must show his picture ID and the correctional staff would not allow him to leave because his appearance has been alter and it does not match his picture ID.

### 3.   Monthly Classification Hearings

19.   When an inmate has his monthly classification hearing, his intake picture is included in his inmate file.  If his appearance has been altered by growing a beard, growing his hair long, shaving a beard or significantly gaining/losing weight, the classification committee orders a new picture for his file and his ID card which he carries with him at all times.  In the unlikely event that the inmate escapes, the department would have a current picture of him even with or without his beard.

### 4.   Daily Inmate, Staff, Visitor Rosters

20.   Corrections facilities keep daily rosters which account for the location of all inmates, staff, volunteers and visitors who come into the facility.  If an inmate is scheduled to depart the facility (medical, legal, parole hearing, etc.), that information is located on the daily inmate roster.  If an inmate altered his appearance in an escape attempt, he still would have to find a way to be listed on the inmate roster authorizing him to be out of the facility, as well as find a way to have a corrections escort accompany him through the front gate in his attempted escape.

### 5.   Entry and Exit Points From Institutions

21.   As a general rule, all pedestrian egress from a prison facility is from one central location, usually referred to as the front gate.  Anyone leaving the institution must have identification as to their status.  I have never heard of an inmate being able to alter his appearance and fool security staff and escape through the front gate.  Obtaining a fake ID and civilian clothing is next to impossible for an inmate to accomplish while he is in a secure facility.

///

6.     Inmate Escort

22.     All inmates who leave the facility are escorted by law enforcement or correctional staff.  In almost every case, these inmates are hand cuffed and usually have leg chains attached, as well.  Thus, an inmate who had altered his appearance by shaving his beard or growing a beard would still have to be escorted from the facility, fully restrained and then would have to escape from his corrections and/or law enforcement escort.

23.     Well run prisons rely on ID cards and/or badges as well as escorts to determine if someone is allowed to go out the front gate.  They do not just rely simply on facial recognition to determine who may leave.  Consequently, altering one's appearance by shaving or growing a long beard is not a way to escape from a professionally managed prison.

24.     Even if an inmate did alter his appearance while inside a prison by either shaving a long beard or growing a beard, he would still have to address all of the issues raised above (B 1-6) in order to effectuate an escape.  From a statistical standpoint, that is very difficult to do.  Occasional escapes from secure confinement do occur; however, they do not occur by an inmate altering his appearance and then somehow walking out the front gate.

C.     Shaving A Beard To Avoid Capture

25.     If a California inmate successfully escapes (which is highly improbable), he has several things he can do to alter his appearance and possibly avoid apprehension: he can cut his hair shorter or completely off; he can cut his one-half inch beard off; he can dye his hair/beard; he can change his clothes; he can immediately leave the area of his escape; he can go into hiding.  Attempting to justify Regulation 15 CA ADC §3062 (h) by alleging difficulty in capture as a rationale is spurious at best.

D.     Summary

26.     With all of the policies and procedures already in place to insure inmates do not escape (B 1-6 above), it appears that this CDCR Regulation 15 CA ADC §3062 (h) is

DECLARATION OF TONI V. BAIR IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

32413786_1.DOC

1    NOT the least restrictive means to meet the governmental security objective of preventing

2    escapes from secure confinement.

3    IV.  WEAPONS AND OTHER CONTRABAND

4         27.    Defendants state that an inmate with a long beard may conceal weapons and/or

5    contraband in their beards, and that long beards are difficult to search.  In my thirty-five (35)

6    plus years of experience in corrections, I have never heard of an inmate concealing a weapon

7    in his beard.  One reason inmates do not conceal weapons in a beard is that there are much

8    better places to conceal weapons, such as in their clothing, in a body cavity, or even in their

9    long hair which the CDCR allows.

10        28.    Nor have I experienced an inmate concealing contraband in his beard.  If an

11   inmate attempted to conceal contraband and/or a weapon in his beard, he would have to find

12   some way to attach it to his beard or it would simply fall out as he walked.  If, however, he

13   attempted to conceal a weapon and/or contraband in his long hair it could sit on his head or

14   in his clothing or in a body cavity without the risk of the item/s falling out.

15        29.    Anecdotal examples of concealing contraband/weapons in long beards may

16   exist; however, I have read hundreds of incident reports from dozens of state prisons and not

17   one of these reports stated that an inmate had concealed a weapon and/or contraband in his

18   beard.  In addition, I have never had a correctional colleague tell me that they have

19   experienced this phenomenon or heard of it.

20        30.    If the CDCR is concerned about weapons and contraband in a beard, they

21   should also be concerned about weapons and contraband in long hair.

22        *An inmate's hair may be any length but shall not extend over the eyebrows, cover the*

23        *inmate's face or pose a health and safety risk.  If hair is long, it shall be worn in a*

24        *neat, plain style, which does not draw undue attention to the inmate* (emphasis

25        added).

26   Regulation 15 CA ADC § 3062, (e).

27   There is an obvious contradiction in allowing hair to be of any length while prohibiting

28   beards beyond one-half inch in length.

8

32413786 1.DOC

31.     If the CDCR feels that having a long beard is a problem, they already have in place a procedure to deal with contraband/weapons in long hair.  Consequently, they could simply implement this same procedure for dealing with the possibility of contraband/weapons in beards.

## V.  STATE AND FEDERAL CORRECTIONAL SYSTEMS POLICIES ON BEARDS

32.     I was not surprised to learn that a national survey of state and federal prison systems conducted by the ACLU of Southern California discovered that today's correctional industry standard allows inmates to grow beards.  The results of that survey were consistent with my previous understanding that the majority of state prison systems and the Federal Bureau of prisons do not forbid inmates from having long beards.  Sixty-nine percent (69%) of the U.S. prison systems allow inmates to grow beards as does the United States Federal Bureau of Prisons (FBOP).  It was determined that thirty-three (33) state prison systems allow beards of any length, as does the Federal Bureau of Prisons with its one-hundred and twelve (112) adult male institutions and twenty-six (26) Community Corrections Centers. (See attached survey, Exhibit 2).

33.     Consequently, the California regulation is not within the norm of today's correctional standards as practiced in the United States.

## VI. AMERICAN CORRECTIONAL ASSOCIATION'S STANDARDS  (ACA)

34.     In 1870 the National Prison Congress met in Cincinnati with130 professional correctional delegates from 24 states, Canada and South America attending.  They adopted twenty-two (22) Principles to guide corrections administrators in the operation of jails and prisons.  These twenty-two (22) Principles were the foundation for today's ACA 500 + Performance-Based Standards.  These standards have been adopted by today's professionals in the field of Corrections to guide local, state and national correctional administrators in operating today's 4500+ correctional U.S. facilities as well as well as international facilities in a secure, safe and humane manner.

32413786_1.DOC

1   35.   The ACA has codified its stand on inmate grooming as found in *Standards for*

2   *Adult Correctional Institutions, 4th Edition*:

3   Freedom in Personal Grooming

4   *Written policy, procedure, and practice allow freedom in personal grooming except*

5   *when a valid interest justifies otherwise.*

6   *Comment: inmates should be permitted freedom in personal grooming as long as their*

7   *appearance does not conflict with an institutions' requirements for safety, security,*

8   *identification, and hygiene.  All regulations concerning personal grooming should be*

9   *the least restrictive necessary (4-4283).* (Emphasis Added)

10   VII.  AMERICAN JAIL ASSOCIATION  (AJA)

11   36.   Local Jails also have professional standards to follow as outlined by the ACA

12   and AJA to assist Jail administrators in managing their facilities in a constitutional manner.

13   37.   The AJA grooming standard 4-ALDF-6A-08 states:

14   *Inmates are allowed freedom in personal grooming except when a valid interest*

15   *justifies otherwise .*

16   38.   Even though the majority of those incarcerated in our nation's approximately

17   thirty-five hundred (3500) jails are pre-trial detainees, many state prisons contract with local

18   jails to house some of their inmates.  In addition, many inmates are sentenced to a term of

19   one year or less in a local jail rather than being housed at a state correctional facility.  Many

20   of these local jails follow the AJA Standard regarding inmate grooming which allows beards.

21   39.   If an inmate from the CDCR is sent to a local Jail to be housed on a contract

22   basis, that inmate would be allowed to grow a beard if the Jail's policies and procedures

23   allow beards as most of them do.

24   VIII.  CONCLUSION

25   40.   It is my professional opinion that Regulation 15 CA ADC §3062 (h) is an

26   exaggerated response to the CDCR security concerns for the reasons stated above.  There is

27   no justifiable reason to justify a broad regulation affecting thousands of inmates who choose

28   to grow a beard for personal or religious reasons.

41.   The ACA, the AJA, the FBOP and thirty-three (33) State Correctional Systems do not believe that beards pose a security threat (escape, contraband, identification) or affect the smooth orderly running of their institutions.  Their consensus further supports my opinions regarding beard length.

42.   I am available for clarification and/or testimony as required.


I declare under penalty of perjury that the foregoing is true and correct.  Executed February 28, 2011 in Boynton Beach, Florida.


Toni V. Bair
Corrections Consultant/
Expert Witness

EXHIBIT 1

# TONI V. BAIR, CORRECTIONS CONSULTANT/EXPERT WITNESS
## P.O. BOX 568, EDEN, UTAH 84310
## 2113 NORDIC VALLEY WAY, EDEN, UTAH 84310
## PHONE/FAX (801) 745-4923
## TONIVBAIR@GMAIL.COM

CURRICULUM VITA

**WORK EXPERIENCE**

1987 - Present   **Corrections Consultant/Expert Witness**

- Specialty areas include Professional Correctional Management, Use of Force, Wrongful Death, Death Row.

1993 - 2008   **Adjunct Professor,**  Department of Criminal Justice, Weber State University - Ogden, Utah

- Courses taught include Corrections Law, C.J. Ethics, Community Corrections, Criminal Justice Management, Prisons: Issues and Dilemmas, Research Methods Senior Seminar, Victimology.

1991 - 1993   **Adjunct Professor,**   City University of New York, John Jay College of Criminal Justice - New York City and West Point Military Academy

- Courses taught included: Issues in C.J. Personnel, Public Administration (Masters Degree Level Courses).

1990 - 1992   **Assistant Commissioner,** New York City Department of Corrections - New York, New York

- Supervised the Compliance Unit, monitored the Department's adherence to court orders, stipulations, decrees, and judgements as well as the City Board of Correction's Minimum Standards, State Commission of Corrections Minimum Standards and Regulations, and internal policies and procedures of the Department.

- Coordinated the Policy and Procedures Unit, responsible for the rewriting of all policies and procedures in the Department.  Approved the writing, formatting, proofing, and issuing of all new policies, procedures, orders, directives and guidelines in the Department.

- Oversaw the Data Coordination Unit, responsible for the collection, analysis, synthesis and interpretation of statistical data collected in the Department. Implemented the networking of all computers within the Assistant Commissioner's office.

- Supervised the Director of the Inmate Grievance Program, who was responsible for responding to all inmate grievance complaints filed by the 23,000 + inmates within the City's correctional system.

/2

- Oversaw the operation of the Use of Force Unit, which monitored all staff-inmate incidents where force was used.

- Responsible for the coordination of the Department's American Correctional Association Accreditation process.

1986 - 1990   **Regional Administrator**, Virginia Department of Corrections - Richmond, Virginia

- Supervised the Wardens of 7 adult prisons, 3 correctional field units, and 1 work release unit to ensure efficient, effective, professional management and operation.

- Developed and monitored standards of performance for regional office staff, eleven (11) institutional wardens and superintendents to ensure that services were administered in a manner consistent with the Department's mission, policies, procedures, initiatives and objectives.

- Developed long-range plans to meet physical, fiscal and programmatic needs for 11 institutions with a $85,000,000 annual budget, 2,700 staff and over 5,000 inmates.

- Conferred with the Deputy Director for Adult Services, Operations Chiefs, and community representatives about the changing needs in community programs, staffing, funding and security.

- Managed the Central Region Office comprised of 21 staff.

1985 - 1986   **Warden**, Mecklenburg Correctional Center - Boydton, Virginia

- Managed all aspects of a 360-bed maximum security prison with a staff of 357 employees and a $9,000,000 annual budget.

- Developed 3 educational, 2 vocational and 5 work programs for the inmate population.

- During the first 3 months of tenure, a federal contempt court order was dismissed as a direct result of my management of the institution.

1983 -1985   **Warden**,  Utah State Prison  -  Draper, Utah

- Responsible for the opening and management of a 288-bed medium security Youthful Offender (18-22) prison.

- Supervised the Director of the 100-bed women's prison.

2

- Supervised the Coordinator of the Firefighter Program, an inmate work-release program which fought forest fires throughout the Western United States.

**1982 - 1983**  **Prison Investigator**, Utah State Prison - Draper, Utah

- Conducted investigations regarding illegal inmate, visitor, and staff activities including incidents of staff violation of policy.

**1979 - 1982**  **Captain**, Utah State Prison -  Draper, Utah

- Co-chaired the accreditation process for the prison, receiving the highest rating ever given by the ACA Accreditation Division at that time.

- Responsible for 6 departments, including personnel and training, inmate property, ACA Standards, inmate visiting/mail, and the volunteer program.

- Supervising Social Service Worker for 17 licensed M.S.W. social workers.

- Certified Baton Instructor, Certified Riot Team Instructor and Leader, Certified Firearm Instructor.

**1978 - 1979**  **Maximum Security Unit Manager**, Utah State Prison - Draper, Utah

- Management Team was responsible for all Maximum Security Unit and Death Row

**1972 - 1978**  **Associate Professor**, Utah State University - Logan, Utah

- Taught social work and sociology courses.

- Supervised all field practicum social work students.

**1969 - 1972**  **Chief**, Division Of Probation Juvenile Court - Ogden, Utah

- Supervised 9 probation officers for the five Northern Utah counties.

**1966 - 1969**  **Licensed Certified Social Worker** (MSW) - Ogden, Utah

- Marriage and family counselor, individual and adolescent therapy.

**1962 - 1965**  **Boy's Supervisor**, Utah State Industrial School - Ogden, Utah

- Counselor in all housing units of the State's co-educational Industrial School for adjudicated delinquent youth.

**EDUCATION**

ABD (Ph.D)   Virginia Commonwealth University, Richmond, Virginia; Doctorate of Public Administration (criminology/criminal justice major), (course work completed, degree not awarded).

ABD (Ph.D)   Utah State University, Logan, Utah - Sociology major, Criminology Emphasis, (course work completed, degree not awarded).

M.S.W.   University of Utah, Salt Lake City, Utah - Social Work major 1967

B.S.      Weber State College, Ogden, Utah - Psychology major  1965

## TRAINING

- Basic Firearms Instructor School, Bureau of Indian Affairs  (Certified Instructor)
- Advanced Firearms Instructor School, Bureau of Indian Affairs (Certified Advanced Instructor)
- Fingerprint Identification School, FBI
- Investigative Procedures, Salt Lake County Attorneys Office
- Special Investigative Supervisors Training, U.S. Department of Justice
- Self-Defense Techniques (AKIDO), Federal Bureau of Prisons (Certified Instructor)
- Riot-Disturbance Control, Federal Bureau of Prisons  (Certified Instructor)
- KOGA Baton  (Certified Instructor)
- Management Training, National Institute of Corrections
- Excellence in Public Management, State of Virginia
- Management Training, American Correctional Association
- Category I Police Officer Training

## PROFESSIONAL ORGANIZATIONS

- American Correctional Association (ACA)
- American Jail Association (AJA)
- Academy of Criminal Justice Educators  (ACJE)
- Western & Pacific Academy of Criminal Justice Educators (WPACJE)

## PROFESSIONAL ACTIVITIES

- Assistant/Adjunct Professor at four (4) Universities (CUNY, VCU, WSU, USU)
- Maintained a private counseling practice for fifteen (15) years
- Certified law enforcement and police science instructor with Utah Police Academy
- Instructor at a conference dealing with development and implementation of the Unit Management Team concept for South Carolina and Indiana DOC's
- Subject of a case study by the Wharton School of Business Program on Correctional Leadership and Innovation for the Edna Clark Foundation entitled <u>A Case Study in the Role of Leadership in a Troubled Prison Setting</u>

- Adjunct faculty member Waynseboro Academy for Training and Staff Development Virginia Department of Corrections
- Frequent guest lecturer at the American University, Department of Law, Justice and

/5

Society - Washington, D.C.
- Member, Curriculum Advisory Committee Administration of Justice - J. Sergeant Reynolds, Community College Richmond, Virginia
- Mentor, WSU Upward Bound, College prep program for low-income, first generation high school students
- A participant in the writing of:  BRIEF OF CORRECTIONS PROFESSIONALS *AN AMICI CURIAE IN SUPPORT OF RESPONDENT*.  In the Supreme Court of the United States No. 04-495, Reginald Wilkinson, at al., Petitioners, v. Charles E. Austin, et al., Respondents.


# TONI V. BAIR
## CORRECTIONS CONSULTANT/EXPERT WITNESS
### Consultant Concerning Professional Correctional Management


**MONTANA**   (2010)   *Peter Leroy Goolsby  vs Darren Raney et al.*        **Report**
A case involving Jail conditions that fell below the standards of care.

**LOUISIANA**   (2010)   *Ernest Billizone vs. James LeBlanc et al..*        **Report**
An inmate filed a grievance and was given a disciplinary report for using language that was prohibited by a Rule.

**MONTANA**   (2009, 2010)   *Nelson v. McMeekin*        **Report**
A case involving unconstitutional Jail conditions.

**COLORADO**   (2009)   Magluta  v. FBOP
A classification case regarding the appropriateness of an inmate being classified to a Super Max facility and BOP's refusal to allow him to transition out of the facility.

**ILLINOIS**   (2009)   *David Lee Green v. United States*        **Report**
A Federal Bureau of Prisons Food Service Supervisor, employed by MCC Chicago, failed to protect an inmate from assault by another inmate.

**COLORADO**   (2008)   Saleh et al. v. FBOP        **Report - Deposition**
Three inmates transferred to a Super Max facility after the 911 attacks in violation of P & P without explanation as to the reasons for the transfer.

**MONTANA**   (2007, 2008)   Kottre v. Missoula County Jail        **Report**
Detainee was incarcerated for twenty-three months, for an alleged DUI and probation hold.  Sued for a violation of his 6th amendment rights guaranteeing a speedy trial.

**MICHIGAN**   (2006)   *Hadix v. Caruso*
The advisability of utilizing in cell restraints on a mentally ill inmate.

**COLORADO**   (2006, 2007)   *Jordan v. Pugh*        **Deposition  -  Trial Testimony**
A Federal Prison case challenging the regulation which prohibits inmates from writing and

publishing articles while in prison.

**FLORIDA**   (2006, 2010)   *Joy Perry, et al., v. Barry Reddish, et al.*
Several Pen Pal internet sites are suing to get the Florida DOC to rescind a policy which
prohibits inmates from advertising for a Pen Pal.

**ARIZONA**   (2000, 2006)   *Talbow  v. Maricopa County et al.*                    **Deposition**
Inmate in Tent City was not provided adequate nutrition or medical care for his illness,
resulting in his loss of vision.

**CALIFORNIA**   (2006)   *Men's Central Jail  (MCJ) - Los Angeles County*          **Report**
Report for the Court regarding jail conditions at MCJ.

**MONTANA**   (2006*)*   *Singleton v. David Schenk*                                **Report**
Sexual harassment and Jail conditions.

**ARIZONA**   (2005)   *Jimenez vs. Maricopa County et al..*                        **Deposition**
Failure to protect where a pre-trial detainee was severely beaten.

**CALIFORNIA**   (2005)   *Cheema v. Chandless*
Jail authorities refuse to allow an immigrant Sheik inmate to wear a religious turban.

**ARIZONA**   (2005)      DeLong v. Arpaio                                  **Affidavit Deposition**
Pre-trial detainee was severely beaten by inmates in the bathroom which resulted in the
loss of his eye.  Failure to protect.

**MONTANA**   (2005*)*   *Johnson v. Edmisten*                       **Report** - **Deposition**
Jail conditions case in 72 hour holding facility (Jail).

**ARIZONA** (2004, 2007) *Wilson vs. Maricopa County*   **Report** - **Deposition** - **Trial Testimony**
Wilson was severely beaten by inmates & died.  Failure to provide adequate supervision.

**MASSACHUSETTS**   (2004)   *Ashman vs.  Marshall*           **Report** - **Trial Testimony**
A suit challenging the re-classification of inmates and allowing a disturbance to continue
for sixteen days in a housing unit where living conditions fell below the standards of care.

**UTAH**   (2004)   *Regan, et al. V. County of Salt Lake*
Asked to offer an opinion regarding if the Salt Lake County Jail was in compliance with a
current Consent Decree.

**ARIZONA**   (2003)   *Lohoff vs. Maricopa County, et al..*                       **Report**
A mentally ill, bi-polar pre-trial detainee was placed in a overcrowded holding cell and
was beaten by other inmates who knew of his alleged sex crime against a minor.

**MICHIGAN**   (2003*)*   *Fingal Johnson, et al.. vs. Bill Martin et al..*        **Deposition**
MDOC policy to ban *Melanic Literature* from the inmate population.

*17*

**HAWAI'I**   (2002)   _Tapaoan vs. Hawaii_                                                        **Report**
Improper searching, restraining, incarcerating after inmate/detainee has been released by the courts.

**THE CITY OF NEW YORK**   (2002)   _Claude Young  vs. The City of New York_
Was the New York City Department of Corrections negligent in supervising inmates, which led to an inmate-on-inmate assault causing Mr. Young to lose his eye.

**NEW YORK STATE**   (2001)   _Hamilton vs. Goord 98-CV-8022 (AGS)_
Cross-gender frisk searches of female inmates.

**NEW YORK STATE**   (2002)   _Marria vs. Raymond Broaddus_        **Report - Trial Testimony**
NYSDOCS policy to ban _The Five Precentor_ newspaper from inmate subscriptions.

**HAWAI'I**   (1999)   _Libby vs. State of Hawai'i, et al.._        **Report - Trial Testimony**
Administrative staff's failure to supervise, resulting in repeated sexual assaults by a corrections officer on a pre-trial detainee.

**HAWAI'I**   (1998)   _Parnell vs. State of Hawaii et al.._
Improper classification and transfer.

**NEW YORK STATE**   (1997)   _Salcedo vs. Bezio, et. al.._
Consulting regarding staff not being disciplined for inmate brutality.

**HAWAI'I**   (1997)   _Allen vs. Iranon, et al.._        **Report - Trial Testimony**
Consulting and testifying involving retaliation and harassment of a prison employee.

**ILLINOIS**   (1990)
Consulted with the Legal Assistance Foundation on professional correctional management and use of force.

**MASSACHUSETTS**   (1987)
Consulted on a case at Walpole where inmate mail was being read by prison officials.

**OHIO, SOUTH CAROLINA**   (1987)
Along with Ben Martinson (Father of Unit Management) provided a two-day workshop on the Unit Management paradigm for the operations of the Ohio and South Carolina state prison systems.

**INDIANA**   (1986)
Hired by the Indiana Legal Services Program and the Indiana Department of Corrections to look into complaints from inmates regarding operations of the Pendelton Reformatory, Pendelton, Indiana.

**Expert Witness**
**Unnecessary Security Measures in Special Housing Units - SHU's**

**NEW YORK**   (1997)   _People vs. Corey Heath_                                **Trial Testimony**
Inmate assaulted a Correctional Officer and received 15 years isolation as a disciplinary sanction.

**NEW JERSEY**   (1992)   _Baca vs. Byer_                                       **Trial Testimony**
Isolation and treatment of a maximum security inmate at Trenton prison.

**NEW YORK**   (1989)   _Bosket vs. Woodbourne Correctional Facility_          **Trial Testimony**
Extraordinary security measures for a maximum security inmate.

**PENNSYLVANIA**   (1989)   _Arbogast et. al.. vs. David Owens_                **Trial Testimony**
Unnecessary use of force after the October 1989 Camp Hill riot.

**Federal and State Expert Witness
Concerning Unnecessary Use of Force**

**NEW YORK**   **(2010)**   Maurice Boatwright v. Wende Correctional Facility  09 CV 0899

Numerous staff used unnecessary force to restrain inmate Boatwright, breaking two of his fingers and assaulting him numerous times to the face and head.

**FLORIDA**   (2007)   _Daniels v. Sarasota County Sheriff's Office_          **Deposition**
Excessive force used by Detention Officers in the Sarasota County Jail on a non-resisting inmate, causing permanent paralysis below the neck; lack of adequate medical care.

**NEW YORK STATE**   (2005) _Sanchez v. Fraser, et al.._          **Report - Deposition**
Excessive force used in a cell extraction.

**HAWAI'I**   (2005, 2006)   _Belle v. State of Hawai'i_          **Report - Deposition**
While cuffed from behind and being escorted by two corrections staff to his holding cell, an inmate had his leg broken when taken to the ground for refusing to walk.

**NEW YORK STATE**   (2003)   _Baskerville vs. Goord, et.al.._          **Report - Trial Testimony**
Unnecessary use of force on a non-resisting inmate.

**NORTH CAROLINA**   (2002)   _Goings vs. Robbie Lee, Warden et. al._
The need for the length of time, and the technique utilized in a 4-point-restraint case.

**HAWAI'I**   (1998)   _Tupelo vs. Penrose, et al.._          **Report**
Inmate was beaten and left handcuffed and shackled in his cell for 44 days.

**NEW YORK STATE**   (1997)   _LeGrande against R. Gromley et al._   **Report - Trial Testimony**
Unnecessary use of force, brutality in a cell extraction, denial of medical attention.

19

**NORTH CAROLINA**   (1995)   *Blanch Correctional Center Inmates v. N.C. D.O.C.*
Class action suit filed on treatment of youthful offenders including use of force, general prison conditions, lack of programming, out of cell time.

**NEW YORK CITY**   (1993)   *D'Angelo against the City of New York*   **Report**
_____Unnecessary use of force.

**NEW YORK STATE**   (1993)   *Diaz, Marquez vs. Weeden et. al.*   **Report**
Unnecessary use of force.

**NEW YORK STATE**   (1993)   *Alexander et. al.. vs. Smith, et. al..*
Gassing of inmates at Attica.

**NEW YORK STATE**   (1988)   *Eng et. al.. vs. Couglin (Attica)*
Treatment of inmates in the segregation unit.

**NEW YORK CITY**   (1987)   *CIFM Inmates v. N.Y.C.  D.O.C.*   **Report - Trial Testimony**
Class action suit - unnecessary use of force and professional correctional management.

**VIRGINIA**   (1985)   *DeLong v. Murray*
Asked by the Attorney General's Office to render and opinion regarding the appropriateness of security staff gassing an inmate while he was in his cell.

### Expert Witness - Wrongful Death Cases

**IDAHO   (2010)**   *Crystal R. Bannister v. Caribou County, Ric L. Anderson Sheriff. et al..*
Hired to offer an expert opinion regarding the suicide of a pretrial detainee incarcerated in the Caribou County, Idaho Jail.

**IDAHO   (2010)**   *Watson v. Gooding County,   1:09-cv-175 REB*   **Report**
A pretrial detainee was incarcerated for DUI, left unattended and hung himself.

**VIRGINIA**   (2009)   *Combs v. Portsmouith City Jail & P H S*   **Disclosure Statement**
A previously diagnosed mentally ill pre-trial detainee was placed in the City Jail and denied medical care as well as proper security observation, which resulted in his untimely death from acute dehydration.

**IDAHO**   (2008)   *Johnson v. Franklin County*   **Report**
A suicidal inmate was placed in Jail, he was not monitored over an eight hour period and was found hanging.



**MONTANA**   (2007)   <u>Joseph's v. Gallatain Co. Jail et. al.</u>                    **Report**
  Plaintiff was arrested on an outstanding warrant for violation of a "no contact order" and taken to Jail.  She was an alcoholic, with a diagnosed heart condition which required medication.  She died of heart failure while in custody.

**ARIZONA**   (2005)   *Sintic vs. State of Arizona, et al..*        **Report - Deposition**
  Wrongful death and failure to protect in a jail suicide matter.

**ARIZONA**   (2004)   *Blaylock vs. Gila County et al..*                **Report**
  Inmate Blaylock received severe head injuries and staff failed to provide timely and adequate medical treatment, resulting in his untimely death.

**ARIZONA**   (2003)   *Vogel vs. Maricopa County, et al..*              **Report**
  A mentally handicapped, bi-polar pre-trial detainee was assaulted by C/O in a forced cell extraction, without the presence of medical or psychiatric staff.

**HAWAI'I**   (2002*)*   *Hill v State, et al..*            **Report - Trial Testimony**
  State negligence in the drug-related death of an inmate.

**GEORGIA**   (2001*)*   *Howard vs. City of Columbus*        **Report - Deposition**
  Jail officials' deliberate indifference to the medical needs of an inmate resulting in the death of the inmate.

### Expert Witness - Death Row Cases

**MARYLAND**   (2004)   *State vs. Wiggins*                        **Report**
  The Supreme Court overturned Mr. Wiggins conviction and remanded for further sentencing.  At issue was whether he was a risk to staff, inmates and society.

**OKLAHOMA**   (1999)   *H-Unit McAlester, Oklahoma Death Watch Policy*   **Trial Testimony**
  Inmates scheduled for execution were placed on death watch 30 days prior to the scheduled execution.

**VIRGINIA**   (1997)   *Murphy vs. State Of Virginia*                **Report**
  Death row inmate being considered for a life sentence; will he be a threat to staff and/or inmates if clemency is granted?

**TEXAS**   (1995*)*   *Lackey vs. Wayne*                    **Trial Testimony**
  Death Row inmate who has been on death row for 15 years; brings up an Eighth Amendment issue, arguing that Texas has "lost" the right to execute him due to their lengthy delays in carrying out the Court's order.

**TEXAS**   (1995)   *Muniz vs. Texas*                        **Trial Testimony**
  Death Row inmate who has been on death row for 18 years; brings up an Eighth Amendment issue, arguing that Texas has "lost" the right to execute him due to their lengthy delays in carrying out the Court's order.

21

**TEXAS**   (1994)   _Gosch vs. Texas_                                    **Trial Testimony**
Texas "jump starting" the execution process to force inmates into Federal court.

**OKLAHOMA**   (1993)   _Mann, et. al.. vs. Reynolds, et. al.._          **Trial Testimony**
Death row inmates not being allowed to have contact visits with their attorneys.

**FLORIDA**   (1991)   _Francis vs. State of Florida_                        **Report**
Death row inmate being considered for a life sentence, will he be a threat to staff and/or inmates?

**GEORGIA**   (1990)   _Brooks vs. State of Georgia_                      **Trial Testimony**
Death row inmate being considered for a life sentence; would he be a threat to staff?


### Consultant Concerning Inmate Suits Brought Against DOC Staff

**HAWAI'I**   (1999)   _LaPierre vs. Allen, et al.,_
_____Inmate LaPierre filing suit for denial of medical treatment by a prison Doctor.

**HAWAI'I**   (2002)   _Jo desMarets vs. State of Hawaii_                    **Report**
Retained by the Hawai'i AG's Office to offer an opinion regarding the DOC's denial of a prison employees allegations of discrimination based upon gender & sexual preference.


11/1/10

11



EXHIBIT 2

| State | Regulation | Web | Long Hair/Beards allowed? | Text | Notes |
|---|---|---|---|---|---|
| Alabama | Alabama Department of Corrections Administrative Regulation 313 | http://www.doc.state.al.us/docs/AdminRegs/AR313.pdf | UNCLEAR – Alabama Administrative Code defers to Prison Commissioner's grooming policy, which is not published on any state website. Prison Chaplain reviews and approves religious "practices" that do not interfere with safety, hygiene, etc. | The Department . . . extends to inmates those opportunities required by the constitution to practice religious freedoms that are consistent with the prudent requirements of facility security, safety, health, and orderliness." "Matters of a religious nature, such as legitimacy of a purported religious activity or object/symbol and eligibility . to participate in a particular religious activity, shall be resolved by the Chaplain." | |
| Alaska | Alaska Department of Corrections Policies and Procedures 806.02 | http://www.correct.state.ak.us/corrections/pnp/pdf/806.02.pdf | YES – permissive. | Prisoners have "freedom to groom and dress as they wish as long as their appearance does not conflict with an institution's requirements for safety, security, identification, and hygiene." "Prisoners must have clean and properly groomed hair". "Staff shall routinely search prisoners' hair for contraband." | |
| Arizona | Arizona Department of Corrections, Department Order 704 | http://www.azcorrections.gov/Policies/700/00704.pdf | NO beards, but religious exception for facial hair up to 1/4 inch in length | Full beards or partial beards . . . are not authorized. Exceptions for full beards may only be granted for medical or religious reasons. Authorized beards shall be kept clean, trimmed and well-groomed at all times." "When . . . a Senior Chaplain [authorizes facial hair] for religious reasons, it shall not exceed one-fourth inch in length." | |
| Arkansas | Arkansas Department of Community Correction Administrative Directive #98-06 | http://www.dccc.arkansas.gov/pdfs/policies/personalclean.pdf | NO long hair or beards, but medical exception for very short mustaches/beards. NO religious exception to grooming rules. | For males hair must be "cut above the ear", and "[t]he wearing of facial hair is a privilege". "When this privilege is requested and granted by the clinical staff, only a neatly trimmed mustache that does not extend beyond the corner of the mouth or over the lip is authorized". (This appears to be a medical exception). | Prison has detailed religious freedom policy that allows, among other things, observance of Ramadan. http://www.adc.arkansas.gov/religious_policy_0109.pdf |
| California | 15 Cal.Code Reg. § 3062(e) | | NO beards longer than 1/2 inch. NO religious exception. | (h) Facial hair, including short beards, mustaches, and sideburns are permitted for male inmates and shall not extend more than one-half inch in length outward from the face." | But see Warsoldier case. |
| Colorado | Colo. Admin. Reg. 850-11(I); (IV)(A)(1)(d). | http://www.doc.state.co.us/sites/default/files/ar/0850_11.pdf exemption from INITIAL INTAKE HAIRCUT/SHAVE. | YES – permissive, and religious | The DOC will allow freedom in personal grooming except when a valid interest justifies otherwise." "Beards and moustaches will be permitted provided they are kept neat and clean." | Newly admitted offenders must cut hair and shave during admissions process for security purposes, but RELIGIOUS EXCEPTION: "An offender who claims that long hair and/or a beard is a fundamental tenet of a sincerely held religious belief will not be required to have a haircut as long as the offender obtains documentation from the Office of Faith and Citizen Programs's coordinator." |
| Connecticut | Connecticut Department of Correction Administrative Directive 6.10.06 | http://www.ct.gov/doc/LIB/doc/PDF/AD/ad0810.pdf | YES – permissive. | Hair shall be clean and appropriately groomed". | |
| Delaware | Delaware Department of Correction Policy No. 5.3 | http://www.doc.delaware.gov/pdfs/policies/policy_5-3.pdf | YES – permissive. | Requires conforming to "reasonable standards of grooming and attire." "Grooming – Neatness and cleanliness in personal appearance." "No personal hygiene needs shall be denied for punitive reasons nor shall the standards conflict with the valid religious beliefs of the offenders." | |
| Florida | Fla. Admin. Code 33-602.101(4) | https://www.flrules.org/gateway/RuleNo.asp?ID=33-602.101 | NO beards or long hair, and NO express religious exception. | Male inmates shall have their hair cut short to medium uniform length at all times with no part of the ear or collar covered." "All inmates shall be clean shaven, provided, however, an exemption from this requirement shall be granted on the basis of a medical diagnosis . . . ." (Corrections officers can also forcibly shave the inmate). | Prison's religious freedom policy may be broad enough to allow beards. |

23

| State | Regulation | Web | Long Hair/Beards allowed? | Text | Notes |
|---|---|---|---|---|---|
| Georgia | Ga. Comp. R. & Regs. r. 125-2-3-.04 | http://rules.sos.state.ga.us/docs/125/2/3/04.pdf | NO beards or long hair, but medical exception (NO religious exception). | Hair shall not be longer than three (3) inches; shall not extend beyond a point which would reach the collar on an ordinary shirt; and shall not cover any part of the ears or eyebrows." "Goatees, beards, and similar facial adornments are prohibited, unless medically indicated." | |
| Hawaii | | http://hawaii.gov/psd/corrections | UNCLEAR -- Hawaii administrative code and prison website silent on grooming policy. | No codified hygiene/grooming rules | See 142 F.3d 442 (9th Cir. 1998) for inmate's failed RFRA challenge to Hawaii's "short hair" policy. RFRA is no longer good law, but this case shows that Hawaii may have a "short hair" policy. |
| Idaho | Idaho Department of Correction Control No. 306.02.01.001 | http://www.idoc.idaho.gov/policy/init306/02/01001.pdf | NO beards/facial hair longer than 1/2 inch, but religious exception for beards no longer than 1 inch. Long hair is allowed. | Offenders are allowed to wear their hair at any length, but it must be kept clean and neat at all times . . . ." "Facial hair must remain neatly trimmed, clean, and cannot exceed one-half inch (½) in length." "Offenders may submit a request for a religious exception to grow their facial hair up to one inch (1) in length." | |
| Illinois | | http://www.idoc.state.il.us/ | UNCLEAR -- Illinois Administrative Code silent on grooming; internal prison policies not published online. | | |
| Indiana | Indiana Department of Correction Policy No. 02-01-104 | http://www.in.gov/idoc/files/02-01-104_3-10-10.pdf | NO beards longer than 3 inches. NO long hair. NO express religious exception, but policy seeks to "ensure an offender's religious beliefs are respected to the extent possible." | Moustaches, sideburns and beards must be neat and clean and of reasonable length and style. Beards shall not extend below the chin more than three (3) inches and no more than one and one-half (1½) inches in length and growth on the side of the face." "The haircuts given by the intake units shall ensure that the offender's hair does not touch the collar, extend over the eyebrows or cover the ears. Staff shall follow any necessary guidelines as presented in the administrative procedures for Policy 01-03-101, 'The Development and Delivery of Religious Services,' and/or in the Department's Handbook of Religious Beliefs and Practices to ensure an offender's religious beliefs are respected to the extent possible." | |
| Iowa | | | UNCLEAR -- Iowa Administrative Code/Corrections Department website silent on grooming policy. | | |
| Kansas | Kansas Department of Corrections, Internal Management Policy and Procedure, Section 12-129 | http://www.doc.ks.gov/kdoc-policies/impp/chapter-12/12129.pdf/ | YES, but inmates assigned to FOOD SERVICE must trim facial hair to no more than 1" in length. | Inmates shall be allowed limited freedom in personal grooming which shall be consistent with procedures established to provide minimum personal appearance and hygiene standards appropriate to ensure safety, security, hygiene, and identification." "In accordance with KAR 44-12-106, inmates shall keep their hair neat and clean and follow reasonable safety standards" "Inmates assigned to food service shall trim their facial hair to no more than 1" in length." | |
| Kentucky | Kentucky Corrections Polices and Procedures, Policy No. 15.1 | http://corrections.ky.gov/nr/rdonlyres/e3c6e5a8-3782-48c8-b162-aca09236f73a0/160610/1599.pdf | YES -- very permissive. | The Department of Corrections recognizes the need for contemporary hairstyles and an inmate may select the hairstyle of his choice within the requirements of this policy. An inmate may: (1) Wear a mustache, beard, or both; and (2) choose the length of his hair." "Hair, mustache, and beard length may be restricted if not kept clean and neat. . . . Hair and beard length may be restricted for security reasons in Special Management Units." | |
| Louisiana | | | UNCLEAR -- Louisiana administrative code and Corrections website silent on grooming policy | | |

24

| State | Regulation | Web | Long Hair/Beards allowed? | Text | Notes |
|---|---|---|---|---|---|
| Maine | Code of Maine Rules 03-201-001 | | UNCLEAR --Code of Maine Rules silent on hair length; internal prison policies not available on prison website | Provisions should be made for inmates to receive haircuts." | |
| Maryland | Maryland Commission on Correctional Standards, Standards, Compliance Criteria, and Compliance Explanations for Adult Detention Centers, .05(K) | http://www.dpscs.state.md.us/publicinfo/publications/pdfs/o.pdf | YES -- very permissive. | Inmates must be provided a reasonable choice of selection of hair style and length and appearance (e.g., beards, moustaches, etc.) subject only to the need to ensure proper hygiene, identification, and the order and security of the facility. Such provision enhances inmate morale and respects personal identity. The policy should take into consideration: the inmate's work assignment; security status; involvement with the community; religious beliefs; etc. Any restrictions placed by the managing official on appearance must be specified in writing, communicated to all inmates upon admission, and consistently enforced." | |
| Massachusetts | | http://www.mass.gov/Eeops/docs/doc/policies/750.pdf | UNCLEAR -- Mass. Dept. of Corrections defers to each prison superintendent's grooming policy. Individual prison policies not published online. | Each superintendent shall develop written procedures to ensure that hair care services for inmates comply with the applicable [state health and safety laws]". | |
| Michigan | Michigan Department of Corrections Policy Directive 05.03.150(E) | http://www.michigan.gov/documents/corrections/05_03_150_330459_7.pdf | YES -- very permissive. No general grooming policy, but religious exemption for hair/beards. | Except in [Special Alternative Incarceration], prisoners may maintain head and facial hair in accordance with their religious beliefs provided that reasonable hygiene is maintained and prisoner identification cards are kept current." | |
| Minnesota | Minnesota Department of Corrections Policy Directive 303.020 | http://www.doc.state.mn.us/DOcpolicy2/html/DPW_Display.asp?Opt=303.020.htm | YES -- very permissive. | Offenders will be permitted freedom in personal grooming as long as their appearance does not conflict with the facility's requirements for safety, security, identification and hygiene." "Hair, including facial hair and eyebrows, must be kept clean and may not be styled or cut to contain lettering, signs or symbols." | |
| Mississippi | Mississippi Department of Corrections, Inmate Handbook, Chapter VI | http://www.mdoc.state.ms.us/Inmate_Handbook/CHAPTER%20VI.pdf | NO hair longer than 3 inches or beards longer than 1/2 inch. NO express religious exception. | Hair and Beard 1. Male inmate's hair will be kept clean and neatly cut so the hair does not fall below the collar and is not more than 3[in] length. Mustaches will be neatly trimmed at all times. Beards and goatees in excess of ½[in] are not permitted for identification purposes. 2. Female inmates will keep their hair clean, neat, and properly maintained at all times." | Religious freedom policy MAY allow grooming rules exceptions: "MDOC provides all eligible inmates with the opportunity to exercise legitimate religious beliefs in a manner consistent with the security and orderly operation of the facility." (Inmate Handbook, Chapter II, http://www.mdoc.state.ms.us/Inmate_Handbook/CHAPTER%20II.pdf). |

25

| State | Regulation | Web | Long Hair/Beards allowed? | Text | Notes |
|---|---|---|---|---|---|
| Missouri | | http://doc.mo.gov/ | UNCLEAR – grooming provision apparently removed from state code of regulations and prison website; however, see challenge to "no long hair" policy in Iron Eyes v. Henry, 907 F.2d 810 (8th Cir. 1990). | See inmate's failed challenge to "no long hair" policy in Iron Eyes v. Henry, 907 F.2d 810 (8th Cir. 1990). "The regulation states that:<br><br>(3) Hair will be clean, neatly groomed and no longer than the base of the rear of the shirt collar. Neither extremely long hair nor artificial hairpieces for men will be permitted with the exception indicated below. Afro styles will be of moderate length.<br><br>(A) Those inmates belonging to an Indian tribe, who have received a court ruling permitting them to grow long hair, will be allowed to do so. Other inmates who claim to belong to an Indian tribe must present written documentation of such to the institution head. The institution head will submit the item to the zone director [of the Division of Adult Institutions] for a final decision as to whether that inmate will be permitted to wear long hair.<br><br>Div. Rul. 116.050(3), Mo.Admin.Code Tit. 14, Div. 20, Ch. 16." | |
| Montana | Montana Department of Corrections Policy No. 4.4.1 | http://cor.mt.gov/content/Res ources/Policy/Chapter4/4-4-1.pdf | YES – permissive. | Facilities will allow offenders freedom in personal grooming as long as their appearance does not conflict with the facility's safety, security, identification, and hygiene regulations. Grooming requirements may be more restrictive in specific training programs." "Each facility will . . . require offenders to trim and maintain head and facial hair in a clean and neat manner . . . ." "Facility staff may require an offender to unbraid, untie, or cut the hair in order to complete an adequate security search." "The facility administrator may restrict individual hair length and styles if they are deemed to present a security risk." | |
| Nebraska | Nebraska Department of Correctional Services, Administrative Regulation No. 116.01 | http://www.corrections.nebras ka.gov/pdf/ar/rights/AR%201 16.01.pdf | YES – permissive. | "[I]nmates shall have the right to . . . (E) Freedom in personal grooming. This choice is limited only by institutional requirements for safety, security, identification, or hygiene." | |
| Nevada | Nevada Department of Corrections Administrative Regulation 705 | http://www.doc.nv.gov/ar/pdf/ AR705.pdf | YES – permissive. | Inmates shall be permitted freedom in personal grooming as long as their appearance does not conflict with the institution's requirements for safety, security, identification, and hygiene." "Male inmates may have . . . beards provided they are kept clean and neat . . . ." "Beards . . . may be required to be removed for security reasons." | |
| New Hampshire | New Hampshire Department of Corrections Policy No. 7.17 | http://www.nh.gov/nhdoc/doc uments/7-17new.pdf | NO beards, but beard no longer than 1/4 inch permitted only with religious shaving waiver. | Shaving Waivers (Attachment 9): Inmates declaring membership in recognized faith groups, and demonstrating a sincerely held religious belief in which the growing of facial hair is of religious significance may request a shaving waiver. If approved, the shaving waiver allows an inmate to maintain a 1/4-inch neatly trimmed beard. No sculpting, shaping or selective shaving is allowed; all facial hair must be trimmed equally. If an inmate with a shaving waiver is found to have shaped his beard, he must shave clean and start again. Abuse of the shaving waiver guidelines may result in revocation of the shaving waiver. Violations of the shaving waiver will be reported to the appropriate Unit Manager who will determine what action will be taken." | |

| State | Regulation | Web | Long Hair/Beards allowed? | Text | Notes |
|-------|-----------|-----|---------------------------|------|-------|
| New Jersey | New Jersey Admin. Code 10A:14-2.5 | http://www.michie.com/newjersey/lpext.dll?f=templates&fn=main-h.htm&cp= | Yes -- permissive. | (a) Inmates shall be permitted to have the hair style or length of hair they choose, including beards and mustaches, provided their hair is kept clean and does not present a safety hazard, or a health, sanitary or security problem. (b) When the length, style or condition of an inmate's hair is found to present a safety hazard, or a health, sanitary or security problem, the inmate shall be required to trim or cut his or her hair or wear an appropriate protective head and/or beard covering." | |
| New Mexico | New Mexico Corrections Department Policy No. CD-151101 | Http://corrections.state.nm.us/policies/current/CD-151100.pdf | NO beards or long hair, but religious exception. | 1. All male inmates' hair will be cut neatly and will not exceed three inches in length. Hair must be cut and trimmed so as not to touch the shirt collar when wearing a properly fitted inmate uniform. Hair shall not touch or cover any portion of the ears. 2. All male inmates'] haircuts shall be reasonably uniform in that there shall be no designs cut into the hair, no partially shaved heads, no styles such as those that might be associated with a [gang] or security threat group or other such hairstyle . . . . 4. Moustaches will be neatly trimmed, not to exceed ½] in length, not extend below the corners of the mouth or cover the lip. 5. Beards and goatees are not permitted and no other facial hair is permitted." "J. Exceptions for Sincerely Held Religious Beliefs. 1. Inmates having a sincerely held religious belief which prohibits the inmate from cutting his hair may request an exception to the grooming standards contained herein as set out below · A religious belief that is not sincerely held will not justify an exception. A belief that is secular (i.e. not religious in nature) will not justify an ex | |
| New York | New York, Department of Correctional Services, Directive #4914 | http://www.docs.state.ny.us/Directives/4914.pdf | NO beards/mustaches longer than 1 inch, but religious exception. Long hair allowed | 1. Beards and Mustaches: An inmate may grow a beard and/or mustache, but beard/mustache hair may not exceed one (1) inch in length unless: a. The inmate has a court order restraining the Department from enforcement; or b. The inmate has requested and received an exemption based upon his or her documented membership in a religion which has an established tenet against the trimming of beards including, but not limited to inmates who are Rastafarian, Orthodox Jew or Muslim. All inmate requests for such exemption shall be referred to and reviewed by Counsells Office after consultation with the facility chaplain. After such review, Counsells Office will make a recommendation to the Deputy Commissioner for Correctional Facilities. If the request is approved by the Deputy Commissioner for Correctional Facilities, a permit will be issued to the inmate." "Hair may be permitted to grow over the ears to any length desired by the inmate. The hair must be neatly groomed and kept clean at all times." | |
| North Carolina | North Carolina Department of Correction, Inmate Conduct Rules, Chapter B, Section .301(3) | http://www.doc.state.nc.us/dop/policy_procedure_manual/b0300.pdf | YES -- no express prohibition. | Personal Cleanliness. Inmates will observe the ordinary requirements of personal hygiene; bathe and shave as often as necessary, keep teeth clean and hair neatly cut and properly groomed. " | |
| North Dakota | | | UNCLEAR -- Prison grooming policy not available on prison website, absent from N.D. Admin. Code | | |

27

| State | Regulation | Web | Long Hair/Beards allowed? | Text | Notes |
|---|---|---|---|---|---|
| Ohio | Ohio Department of Rehabilitation and Correction Administrative Rule 9-25.1 | http://www.drc.ohio.gov/web/administrative_rules/docume nts/9-25.pdf | NO beards longer than 1/2 inch; NO hair longer than 3 inches; religious exception if application approved. | "Hair shall be clean, neatly trimmed, shall not extend over the ears or the shirt collar and shall not protrude more than three inches from the scalp." "Sideburns, beards, and moustaches must be clean and neatly trimmed. Facial hair must not protrude more than one-half inch from the skin." "If the grooming restrictions established by this rule substantially burden an inmate's sincerely held religious belief, the inmate may seek an appropriate exemption by applying for a religious accommodation." | |
| Oklahoma | Oklahoma Department of Corrections Policy and Operations Manual, Section OP-030501 | http://www.doc.state.ok.us/offtech/op030501.pdf | YES – no express prohibition. | Except when a valid interest justifies otherwise (as described in this procedure), facilities will allow freedom in personal grooming." "[After initial intake haircut], male hairstyles and appearances, including facial hair, will not conflict with security, sanitation, safety, or health requirements of the department. The growing, shaving, cutting, or styling of hair will remain in compliance with this procedure and with conventional community standards. The growing, shaving, or cutting of hair, which results in a change in the offender's appearance, will require a new identification picture to be taken at the offender's expense . . . " | |
| Oregon | Oregon Department of Corrections Administrative Rule 123 | http://arcweb.sos.state.or.us/rules/OARS_200/OAR_291/29 1_123.html | YES – permissive | Head and facial hair must be maintained daily in a clean and neat manner." "If a hair search needs to be conducted by staff, it may be necessary to require that the inmate unbraid, loosen, or cut the hair to complete the search." "Haircuts and styles which draw undue attention to an individual or group will not be allowed." | |
| Pennsylvania | Pennsylvania Department of Corrections Policy No. DC-ADM 807 | http://www.portal.state.pa.us/portal/server.pt/community/de partment_of_corrections/460 4/doc_policies/612830 | NO long hair or beards longer than 3 inches, but religious exemption with application. | "Hair that does not fall below the top of the collar in length (Afro styles no longer than four inches) shall be permitted." "A beard or goatee no longer than three inches; a mustache and sideburns shall be permitted provided they are kept neat and clean." "An inmate request for a hairstyle exemption based on religion shall be in accordance with Department policy DC-ADM 819, "Religious Activities." | |
| Rhode Island | | | UNCLEAR – Code of Rhode Island Rules and prison website silent on grooming | | |
| South Carolina | | | UNCLEAR – Department of corrections does not publish internal policies; no grooming policy in S.C. code of regulations | | |
| South Dakota | South Dakota Department of Corrections Inmate Living Guide at 7 | http://doc.sd.gov/about/public ations/documents/InmateLivi ngGuide82009.pdf | YES – permissive. | Hair must be kept clean and neat in appearance and cannot pose a safety or sanitation threat in your work or program assignment." | |
| Tennessee | Tennessee Department of Corrections Administrative Policy 502.03 | http://tennessee.gov/correctio n/pdf/502-03.pdf | YES – very permissive | Inmates shall be permitted freedom in personal grooming and dress as long as their appearance does not conflict with the institution's requirements for safety, security, identification, sanitation, and hygiene. "The hair must be groomed and kept clean." "An inmate shall be required to wear a hair/beard net or head covering if his/her hair is of length which is likely to become entangled if working near machinery, or for sanitary purposes, such as when working in health service or food service areas." "Inmates shall be routinely subject to searches of hair." "Forcible cutting or trimming of hair shall not be done except upon orders of a physician for health reasons." | |

| State | Regulation | Web | Long Hair/Beards allowed? | Text | Notes |
|-------|-----------|-----|--------------------------|------|-------|
| Texas | Texas Department of Criminal Justice, Offender Orientation Handbook, Section III(A) | http://www.tdcj.state.tx.us/publications/cid/OffendOrientHbkNov04.pdf | NO beards or long hair; NO religious exception. | "Male offenders must be clean-shaven. No beards, mustaches or hair under the lip will be allowed." "Male offenders must keep their hair trimmed up the back of their neck and head. Hair must be neatly cut. Hair must be cut around the ears. Sideburns will not extend below the middle of the ears." | |
| Utah | | http://corrections.utah.gov/ | UNCLEAR – Utah prison website and Administratave Code silent on grooming. | | |
| Vermont | Vermont Department of Corrections Rule | http://www.doc.state.vt.us/about/policies/rpd/posted_for_comment/380-01-religious-programs-re-posted-1-1-1-07_pdf/view?searchterm=compelling%20interest | YES – no grooming policy, but religious accomadations with approval. | Inmates will not be discriminated against because of religious beliefs and practices." "There will not be no substantial burden placed on an inmate's right to practice their religion, unless justified by a compelling governmental interest." "An inmate may request a religious accommodation by filling out an Inmate Religious Accommodation Request Form (Attachment 3) and submitting it to the Superintendent. The Superintendent in consultation with the Volunteer Services Coordinator and the Facilities Executive will approve or deny the request." | Muslim "headscarf" permitted, but headscarf may be searched. |
| Virginia | Virginia Department of Corrections Operating Procedure 864.1 | http://static.ngnetwork.com/rtd/pdfs/20091207_hair.pdf | NO beards or long hair. Medical exception, but no religious exception. | Offenders are permitted freedom in personal grooming within the standards set forth in this operating procedure. Hair styles and beards that could conceal contraband; promote identification with gangs; create a health, hygiene or sanitation hazard; or could significantly compromise the ability to identify an offender are not allowed." "Male offenders' hair will be neatly cut no longer than above the shirt collar and around the ears." "No beards or goatees are allowed." "A mustache is authorized for male offenders; however, it must be neatly trimmed and must not extend beyond the corner of the mouth or over the lip." If an offender has a medical condition that is aggravated by shaving or complete removal of facial hair, the offender must receive a 'no shave' medical order from the facility medical authority. Offenders who have a 'no shave' medical order may not shave any part of their face and must continually trim all facial hair to not exceed 1/4" in length." | |
| Washington | State of Washington Department of Corrections Policy 440.080 | http://www.doc.wa.gov/policies/default.aspx | YES – permissive. | Offenders will be permitted freedom in personal grooming as long as their appearance does not conflict with the facility's requirements for safety, security, identification, and hygiene." | |
| West Virginia | | | UNCLEAR – Administrative Code "incorporates" prison policy directives, but directives are not published on any West Virginia state website | | |
| Wisconsin | | | UNCLEAR – State defers to Prisons' grooming policies, but internal policies not published on any state website. | | |

| State | Regulation | Web | Long Hair/Beards allowed? | Text | Notes |
|-------|-----------|-----|--------------------------|------|-------|
| Wyoming | Wyoming Department of Corrections Policy No. 4.201 | http://doc.state.wy.us/policies /index.html | YES – permissive, and religious exception. | Haircuts and styles which draw undue attention to an individual inmate or group will not be allowed." "Inmates will not be permitted to wear hairstyles that have been demonstrated to be an indicator of membership in any security threat group." "Hairstyles that are religiously indicated by the mandatory tenets of the inmate's professed religion, as verified by an approved religious representative of that faith and/or as outlined in WDOCIs Handbook of Religious Beliefs, will be authorized as long as the hair is capable of being searched and does not present a health or safety hazard. (i.e., Orthodox Judaism, Native American, Rastafarian, Sikh)." "Head and facial hair may be kept at any natural length provided that it is kept clean and neat in appearance at all times, does not present an undue risk to health, and is able to be searched." "If a hair search needs to be conducted by staff, it may be necessary to require that the inmate unbraid, loosen, or cut the hair to complete the search." " An inmate who alters his/her appearance by adding or removing facial hair or altering the length and style of his/her hair in a v | |

30

1

## PROOF OF SERVICE

2

        I, Lisa Reynolds, declare:

3

4

        I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is Alston & Bird LLP, 333 South Hope Street, Sixteenth Floor, Los Angeles, California, 90071.  I am over the age of eighteen years and not a party to the action in which this service is made.

5

6

        On March 3, 2011, I served the document(s) described as **DECLARATION OF TONI V. BAIR IN SUPPORT OF PLAINTIFF SUKHJINDER S. BASRA'S MOTION FOR A PRELIMINARY INJUNCTION** on the interested parties in this action by enclosing the document(s) in a sealed envelope addressed as follows:  SEE ATTACHED SERVICE LIST

7

8

9

☒    BY MAIL:  I am "readily familiar" with this firm's practice for the collection and the processing of correspondence for mailing with the United States Postal Service.  In the ordinary course of business, the correspondence would be deposited with the United States Postal Service at 333 South Hope Street, Los Angeles, California 90071 with postage thereon fully prepaid the same day on which the correspondence was placed for collection and mailing at the firm.  Following ordinary business practices, I placed for collection and mailing with the United States Postal Service such envelope at Alston & Bird LLP, 333 South Hope Street, Los Angeles, California 90071.

10

11

12

13

☐    UPS NEXT DAY AIR:  I deposited such envelope in a facility regularly maintained by UPS with delivery fees fully provided for or delivered the envelope to a courier or driver of UPS authorized to receive documents at Alston & Bird LLP, 333 South Hope Street, Los Angeles, California 90071 with delivery fees fully provided for.

14

15

16

☐    BY FACSIMILE:  I telecopied a copy of said document(s) to the following addressee(s) at the following number(s) in accordance with the written confirmation of counsel in this action.

17

18

☐    BY E-MAIL:  I submitted an electronic version of this document and exhibits, if any, via PDF to all parties at their e-mail addresses on the attached Service List.

19

☐    [State] I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

20

21

☒    [Federal]    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

22

23

        Executed on March 3, 2011, at Los Angeles, California.

24

*Lisa Reynolds*

25

Lisa Reynolds

26

27

28

LEGAL02/32496584v1

*SUKHJINDER S. BASRA v. MATTHEW CATE, ET AL*
**USDC Case No. CV11-01676 SVW (FMOx)**


**Service List**


Matthew Cate                              Defendant
c/o Legal Office
1515 "S" Street
Room 314-S
Sacramento, CA 95811


Warden Terri Gonzalez                     Defendant
c/o Andrew Pitoniak
Litigation Coordinator
Men's Colony
Highway 1
San Luis Obispo, CA 93409